**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.  : | Case No. 1:21-cr-185-3 (RMM) (EGS) |
| : | |
| CHRISTOPHER MOLINA-GARCIA, : | UNDER SEAL |
| : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § § 3142 (f)(1)(A). The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**Procedural History**

On March 4, 2021, the defendant was indicted on one count of violent crime in aid of racketeering (assault with a dangerous weapon) pursuant to 18 U.S.C. § 1959(a)(3) and one count of unlawful possession, brandishing and discharge of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A)(iii). On May 8, 2021, the defendant was detained by local law enforcement in Loudon County, Virginia, in connection with a burglary in progress. While detained, the defendant was arrested on the warrant issued by this Court following indictment. The defendant was transferred to this jurisdiction on May 11 for his initial appearance, at which the government made an oral motion for the Court to hold him without bond pending trial to ensure the safety of the community and his appearance at trial.

1

Pursuant to 18 U.S.C. § 3142(e)(3)(B), there exists a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the defendant's appearance in this case and otherwise protect the community.

The government submits that the defendant is a danger to the community, as well as a flight risk. The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). The government must establish by preponderance of the evidence that a defendant poses a risk of flight. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). In an indicted case at a detention hearing, the government may proffer evidence. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, along with the applicable rebuttable presumption, the government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the defendant's appearance at future proceedings.

## Factual Background

### 1. The 18th Street Gang

The government alleges that the defendant is a member of "18th Street," a violent international street gang engaged in a variety of criminal activities including, among other things, acts involving assault, robbery, kidnapping, murder, and firearms trafficking in the District of

Columbia and elsewhere. The 18th Street gang is currently active in urban and suburban areas of the United States. 18th Street members are required to commit acts of violence to further the interests of the gang. These violent acts are often directed against rival gang members, 18th Street members who have violated gang rules or have otherwise disrespected the gang, and persons who are suspected of cooperating with law enforcement. Additionally, 18th Street members are also known to sell and transport narcotics, weapons, and other contraband to generate money to support the gang and its criminal activities. Some of the proceeds of this criminal activity are wired to members of the gang's leadership in other countries. 18th Street members are known to control geographical areas and use violence to maintain their control.

Members of 18th Street are organized into "cliques," or smaller groups operating within specific cities or regions that all operate under the umbrella rules of 18th Street. 18th Street is highly organized and well structured. It follows initiation rituals, uses specific gang signs, colors and symbols, and requires adherence to and enforcement of specific rules of conduct and payment of dues that are used, in part, to support the gang and its members. 18th Street cliques often work cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement.

18th Street members and associates use certain terms to describe the organizational structure of and certain positions within the gang, including but not limited to the following: A "Homeboy" is a full member who has been "jumped in" to the gang after he has proven his loyalty and worth to Homeboys. Being "jumped in" to the gang usually involves a physical beating at the hands of other Homeboys that lasts for 18 seconds. A "Civil," or a helper, serves as a "lookout" that alerts Homeboys to the presence of law enforcement officers or rival gangs in the neighborhood, makes deliveries of narcotics, serves as a driver for Homeboys, delivers messages,

and offers other assistance to the gang. Homeboys receive approval from 18th Street's senior leadership to "jump in" a Civil and promote him to a Homeboy as a result of work the Civil performed to benefit the gang, including, among other things, distributing narcotics, participating in gang-related violence, or through other means whereby the Civil is deemed to have proven his worth to the gang. A "Palabrero" is a senior Homeboy and leader who commands a clique and can order gang members to commit acts of violence, including murder, kidnapping, assault, and robbery. Tiny Locos Surenos, also known as "TLS," is an 18th Street clique operating in Washington, D.C.

The defendant has been indicted on one count of violent acts in aid of racketeering for an assault with a dangerous weapon that occurred on the platform of a Metro station as described further below. The defendant has also been charged with one count of aiding and abetting the use of a firearm during a crime of violence. The government's evidence at trial will prove that 18th Street is an enterprise engaged in racketeering activity, and that the defendant is a member of the TLS clique of the 18th Street gang who committed the enumerated crime of assault with a dangerous weapon in order to increase or maintain his position within the enterprise.

**2. September 17, 2019 – Assault with a Dangerous Weapon**

On September 17, 2019, at approximately 3:31 p.m., officers of the Metropolitan Police Department were dispatched to the Georgia Ave-Petworth Metro station, located at 3750 Georgia Avenue NW, Washington, D.C., for the report of gunshots heard within the station. Metro surveillance cameras captured an altercation between two groups of young men. The surveillance footage shows the first group quickly walk in a menacing manner toward the second group of males, who are accompanied by one female, as the second group is seated on the Metro platform.

One of the members of the first group was later identified as 18th Street member Defendant Christopher Molina-Garcia, wearing a black t-shirt with a white adidas logo. See Figure A below.



*Figure A*

The two other individuals in this group have also been identified as 18th Street gang members. Two members of the second group were later identified by law enforcement as MS-13[1] gang members. As the 18th Street group ascends on the MS-13 group, Defendant Molina-Garcia and two of the other members in his group begin to run as they grow closer to the MS-13 group. One of the identified 18th Street gang members pulls out a meat cleaver from his backpack, and Defendant Molina-Garcia pulls a large knife out of his waistband. The MS-13 group is still seated as these weapons are brandished, but then the MS-13 members stand up and brandish knives of their own. Defendant Molina-Garcia and the 18th Street group have a brief stand-off with the MS-13 group before they begin to back up, still brandishing their weapons. See Figure B below.

---

[1] MS-13 is the chief rival of the 18th Street gang, similar in its trans-national structure, its degree of organization and the manner in which it operates.



*Figure B*

As the 18th Street group begins to walk backwards, away from the MS-13 group, a co-defendant from the 18th Street group pulls out a handgun from his backpack and points it at the MS-13 group, as the other co-defendants can both be seen continuing to brandish their knives. The defendant is pictured at the far right of the still shot from the surveillance footage, holding his weapon. See Figure C below.



*Figure C*

The gun wielding co-defendant fires two shots from his firearm in the direction of the MS-13 group. The 18th Street group then runs off of the metro platform. Members of the 18th Street group appear to hand off backpacks believed to contain some of their weapons to other associates as they leave the Metro station. At the time the gunshots were fired, the unidentified female standing with the MS-13 group was in the direction of the gunfire, and a Metro train with numerous passengers was pulling into the station. Law enforcement recovered an expended projectile from the Metro platform in a location consistent with the direction of the gunfire.

### 3. September 27, 2019 Stop and Weapon Arrest

On September 27, 2019, members of the Metropolitan Police Department ("MPD") received a radio broadcast for an armed robbery that occurred in the area of 4300 Arkansas Avenue NW, Washington, D.C. A lookout was broadcast for a Hispanic male wearing a blue shirt who was reportedly with a group of other Hispanic males and females. Officers canvassed and stopped four subjects in front of 3833 14th Street NW[2]. One of the individuals stopped was identified as Defendant Molina-Garcia. Defendant Molina-Garcia gave consent for officers to search his backpack, and inside of his backpack a large knife was discovered. All four subjects were identified and no arrests were made.

### 4. October 30, 2019 Stop and Gun Arrest

On October 30, 2019, law enforcmeent received a tip that members of the 18th Street gang were congregating in a laundry room located at 614 Longfellow Street NW, Washington, D.C., which was a location known to MPD officers as a common meeting location utilized by the gang. The tip included information that the 18th Street gang members were planning to commit violence against an opposing gang. MPD officers arrived at the location and stopped six individuals who did not reside at the location. One of the individuals was identified as Defendant Molina-Garcia. Another one of the individuals was discovered to have a satchel containing a fully functional, black Taurus .38 special revolver loaded with five rounds of ammunition. A firearms examination was later conducted between the recovered Taurus .38 special revolver and the projectile recovered from the Metro platform on September 17, 2019. The examination revealed that based on sufficient agreement of individual characteristics, the recovered projectile was identified as having been fired from the recovered black Taurus .38 special revolver. Distinctive Halloween masks

---

[2] 3833 14th Street NW is approximately .5 miles from the Georgia Ave-Petworth Metro station.

were also recovered from some of the stopped individuals in the laundry room on October 30, 2019.

Law enforcement later discovered publicly available YouTube videos that appear to reference one of the 18th Street gang cliques in Washington, D.C.  One of these YouTube videos was posted on January 28, 2020, and has the name "Roosevelt[3] lokotes- 18st sureños crazy."  The posted video contains a black and white photograph with numerous individuals demonstrating what appear to be gang signs with their hands.  See Figure D below.



*Figure D*

---

[3] Theodore Roosevelt High School is a local high school in Washington, D.C. that has been identified by law enforcement as being a high school attended by both 18th Street and MS-13 gang members in the past, including Defendant Molina-Garcia.

Based upon the clothing of the individuals in the video, the specific Halloween masks worn by the individuals, and other characteristics of the location of the photograph, the photograph appears to have been taken on October 30, 2019 at 614 Longfellow Street, Northwest, prior to MPD's arrival.

### Argument

1. **The Nature and Circumstances of the Offenses Charged**

The nature and circumstances of the offense charged weigh heavily in favor of detention. The defendant, working with multiple co-defendants, perpetrated a violent assault using knives and a firearm in the middle of the afternoon on a public transportation platform. The defendants brandished their knives and the co-defendant discharged the firearm as a train was pulling into the station. Participating in such brazen, violent conduct in a public place that is routinely populated with hundreds of people shows a degree of dangerousness which, on its own, makes the defendant deserving of pre-trial detention in order to protect the community. The defendant acted with others to perpetrate violence that could have easily resulted in loss of life, whether of the intended victims or of innocent bystanders.

Furthermore, as detailed above, the defendant perpetrated this assault due to his membership in a violent street gang. The defendant's membership in an enterprise which is devoted to violence further elevates his dangerousness. The violence that was perpetrated on the Metro platform was not happenstance – it is the very conduct that is specifically encouraged and supported by the gang, and even demanded by its leadership. The defendant's willing and voluntary dedication to a street gang whose core tenets are predicated on violent acts leaves no doubt he cannot rebut the presumption that he must be detained pending trial.

2. **Weight of the Evidence Against the Defendants**

The weight of the evidence in this case is exceptionally strong, beginning with the entire violent incident being captured on high resolution video. The defendant can clearly be seen

brandishing a knife during the assault, and the co-defendants can clearly be seen brandishing their weapons as well, including a firearm. Ten days after the assault, the defendant was stopped by police and found to be in possession of a knife. Six weeks after the assault, the defendant was stopped at a gang meeting in the laundry room of an apartment building, where his fellow gang members were gathered for a meeting. The same gun that was fired on the Metro platform on September 17, 2019, was recovered from one of the members. There is overwhelming evidence of the defendant's guilt in perpetrating this brazen assault and carrying a dangerous weapon.

3. **History and Characteristics of the Defendant**

The defendant has a troubling record considering his relatively young age. He has a pending case in D.C. Superior Court for possession of a machete (2020-CMD-2327) stemming from an arrest on February 20, 2020, and a pending Maryland case for carrying a concealed dangerous weapon (1E00710781) stemming from an arrest on January 17, 2020. He was also arrested and charged with unlawful entry on January 3, 2020 (2020-CMD-246). Furthermore, the defendant was only arrested on this warrant after being detained (although not charged) in connection with a burglary last week in Loudon County, Virginia. The defendant's repeated contacts with law enforcement over the past fifteen months show that the defendant is a danger to the community and thus his history weighs strongly in favor of pre-trial detention.

4. **The Nature and Seriousness of the Danger to any Person or the Community that would be Posed by Release**

The final factor clearly weighs in favor of pre-trial detention as well. The charged offense speaks to a significant level of danger to the community should the defendant be released. The discharge of a firearm and the brandishing of weapons on a public train platform shows deep disregard for the laws governing violent conduct in our society, and underscores the high level of danger this defendant poses to the public. Furthermore, as stated previously, the defendant's

membership in a violent street gang is yet another factor to consider in weighing the seriousness of the threat he poses to the community.

### 5. Flight Risk

The defendant cannot be trusted to return to court. According to the Superior Court docket, the defendant is not in compliance with his pre-trial release conditions in both Superior Court cases. There is also an active bench warrant in Maryland for his failure to appear in his pending case.

### Conclusion

In consideration of all these factors, the government respectfully submits that the defendant cannot rebut the presumption that no conditions or combinations of conditions can effectively ensure the safety of any other person and the community. Detention is also warranted in this case because the defendant is a flight risk. The United States therefore respectfully requests that the Court hold the defendant without bond pending trial.

Respectfully Submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 415793

By: */s/ Gilead Light*
Gilead Light
D.C. Bar Number 980839
Gilead.light@usdoj.gov
Jack Korba
D.C. Bar No. 1010303
John.Korba@usdoj.gov
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6880 (Light)
(202) 252-7246 (Korba)

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2021, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

By:     */s/ Gilead Light*
           GILEAD LIGHT
           Assistant United States Attorney