UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NO. 1:21-CR-0085 |
| v. : | |
| CHRISTOPHER MOLINA-GARCIA, : | **FILED** MAY - 5 2022 |
| Defendant. : | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

## STATEMENT OF OFFENSE IN SUPPORT OF DEFENDANT'S PLEA OF GUILTY

I. Summary of the Plea Agreement

Defendant Christopher Molina-Garcia agrees to admit guilt and enter a plea of guilty to count one of the Indictment charging him with Violent Crime in Aid of Racketeering – Assault with a Dangerous Weapon, in violation of 18 U.S.C. § 1959(a)(3), and one count of an information charging him with Unlawful Possession, Brandishing, and Discharge of a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

The penalty for Count One of the Indictment, Violent Crime in Aid of Racketeering – Assault with a Dangerous Weapon, is:

(A) a term of imprisonment of not greater than twenty (20) years of imprisonment;

(B) a fine not to exceed $250,000;

(C) a term of supervised release of not more than three (3) years to follow any period of incarceration; and

(D) a special assessment of $100.

The United States Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of for imprisonment and any term of supervised release and/or probation.

The penalty for Count One of the Information, Unlawful Possession, Brandishing, and

Discharge of a Firearm During a Crime of Violence, is:

    (A)  a mandatory minimum sentence of five (5) years of imprisonment to be served consecutive to any other term of imprisonment;

    (B)  a maximum sentence of life imprisonment;

    (C)  a fine not to exceed $250,000;

    (C)  a term of supervised release of not more than five (5) years to follow any period of incarceration; and

    (D)  a special assessment of $100.

The United States Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of for imprisonment and any term of supervised release and/or probation.

## II. Elements of the Offenses

The essential elements of the offense of Violent Crime in Aid of Racketeering – Assault with a Dangerous Weapon, in violation of 18 U.S.C. § 1959(a)(3), each of which the Government must prove beyond a reasonable doubt, are that:

    (1)  an enterprise existed;

    (2)  the enterprise engaged in, or its activities affected, interstate commerce;

    (3)  it was engaged in racketeering activity;

    (4)  the defendant committed violent crimes; and

    (5)  the defendant committed the violent crimes to gain entrance to, or maintain or increase his position in, the enterprise.

In addition, the essential elements of the offense of Assault with a Dangerous Weapon in violation of 22 D.C. Code § 402, as alleged in Count One of the Indictment, each of which the Government must prove beyond a reasonable doubt, are that:

(1)  the defendant committed a threatening act that reasonably would create in another person a fear of immediate injury;

(2)  the defendant acted voluntarily, on purpose, and not by mistake or accident;

(3)  at the time, the defendant had the apparent ability to injure [a person]; and

(4)  the defendant committed the threatening act with a dangerous weapon.

The essential elements of the offense in Count One of the Information, the offense of Unlawful Possession, Brandishing, and Discharge of a Firearm During a Crime of Violence, each of which the Government must prove beyond a reasonable doubt, are that:

(1)  the defendant committed the crime of violence as charged in Count One of the Indictment; and

(2)  the defendant knowingly possessed a firearm in furtherance of that crime.

III.   Brief Statement of the Facts

 On September 17, 2019, the defendant CHRISTOPHER MOLINA-GARCIA (hereinafter "MOLINA-GARCIA") was a member or associate of the international criminal street gang known as "18th Street."  The 18th Street gang engages in a variety of criminal activities to include acts of assault, robbery, kidnapping, murder, and firearms trafficking in the District of Columbia and other jurisdictions, both within the United States and in foreign countries. 18th Street members are required to commit acts of violence to further the interests of the gang.  These violent acts are often directed against rival gang members, 18th Street members who have violated gang rules or have otherwise disrespected the gang, and people who are suspected of cooperating with law enforcement.  Additionally, 18th Street members are also known to possess, sell and transport narcotics, weapons, and other contraband to generate money to support the gang and its criminal activities both within the District of Columbia and across state lines.  Some of the proceeds of this

criminal activity are wired to members of the gang's leadership in foreign countries. 18th Street members are known to control geographical areas and use violence to maintain their control.

The 18th Street gang, including its leaders, members, and associates, constitutes an enterprise, that is, a group of individuals associated in fact that engages in, and the activities of which affect, interstate and foreign commerce. 18th Street is an organization whose members and associates function as a continuing unit for a common purpose of achieving the objectives of the enterprise. The 18th Street enterprise, through its members and associates, engages in racketeering activity to include acts involving murder and drug trafficking.

On September 17, 2019, at approximately 3:31 p.m., officers of the Metropolitan Police Department were dispatched to the Georgia Ave-Petworth Metro station, located at 3750 Georgia Avenue, Northwest, Washington, D.C., for the report of gunshots heard within the station. Metro surveillance cameras captured an altercation between two groups of young men. The surveillance footage showed the first group quickly walk in a menacing manner toward the second group of males, who were accompanied by one female, as the second group was seated on the Metro platform. The first group included 18th Street gang members or associates MOLINA-GARCIA, Christian Figueroa-Gutierrez (hereinafter "FIGUEROA-GUTIERREZ"), a third identified male individual, and a fourth unidentified male individual. The second group consisted of individuals later identified as suspected rival gang members J.M, W.O., a third unidentified male, and a fourth unidentified female.

As the first group ascended on the second group, MOLINA-GARCIA, FIGUEROA-GUTIERREZ, and the fourth unidentified male individual began to run as they grew closer to the second group. FIGUEROA-GUTIERREZ pulled out a meat cleaver from his backpack, and MOLINA-GARCIA pulled a large knife out of his waistband. Both FIGUEROA-GUTIERREZ

and MOLINA-GARCIA proceeded to brandish these weapons in the direction of the second group. The second group was still seated as these weapons were brandished, but then the males in the second group stood up and brandished knifes of their own.  MOLINA-GARCIA, FIGUEROA-GUTIERREZ, and the fourth unidentified individual had a brief stand-off with the second group on the Metro platform before they began to retreat.

In the meantime, the third identified male individual in the first group approached the second group as well, pulled out a handgun from his backpack, and fired what appeared to be at least two gunshots at the second group.  Both groups then left the platform by entering separate Metro train-cars.  Members of the first group of 18th Street members or associates appeared to hand off backpacks believed to contain some of their weapons to other associates as they left the scene. At the time the gunshots were fired, the unidentified female in the second group was in the direction of gunfire, and a Metro train with numerous passengers was pulling into the station.

MOLINA-GARCIA was positively identified in the Metro surveillance footage by an associate of his who has known MOLINA-GARCIA for a significant period of time.  On September 27, 2019, MOLINA-GARCIA was stopped in the 6000 block of Georgia Avenue NW for an unrelated incident by officers of the Metropolitan Police Department.  MOLINA-GARCIA provided consent for one of the officers to search the backpack he was wearing.  During a search of the backpack, it was discovered that MOLINA-GARCIA had a large knife in his possession.

At the time MOLINA-GARCIA committed the crime of violence as described on September 17, 2019 within the Georgia Ave-Petworth Metro station, MOLINA-GARCIA was a member or associate of the 18th Street gang, and his purpose in committing the assault was to gain entrance to, or to maintain or increase his position in the 18th Street gang.  Furthermore, the firearm discharged by MOLINA-GARCIA'S co-defendant was owned by the gang, and MOLINA-

GARCIA was aware that his fellow gang members, including his co-defendant, owned and routinely possessed firearms, and would use such firearms to assault rival gang members.

### *Limited Nature of Proffer*

This proffer of evidence is not intended to constitute a complete statement of all facts known by the government, but rather is a minimum statement of facts intended to provide the necessary factual predicate for the guilt plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the defendant's plea of guilty to the charged offenses.

By: /s/ Jack Korba
Gilead Light
DC Bar No. 980839
gilead.light@usdoj.gov
John Korba
D.C. Bar No. 1010303
john.korba@usdoj.gov
Assistant United States Attorneys
Violent Crime and Narcotics Trafficking Section
555 4th Street, N.W., Fourth Floor
Washington, D.C. 20530
(202) 252-6880 (Light)
(202) 252-7246 (Korba)

### *Defendant's Acceptance*

I have read each of the pages that constitute the government's proffer of evidence and have discussed it with my attorney, Dani Jahn, Esquire. I fully understand this proffer and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legal bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those as set forth in my plea agreement.

I am satisfied with the legal services provided by my attorney in connection with this proffer and my plea agreement and matters related to it.

Date: 04/27/22

Christopher Molina-Garcia
Defendant

### *Attorney's Acknowledgment*

I have read each of the pages that constitute the government's Proffer of Evidence, reviewed them with my client, Christopher Molina-Garcia, and discussed the provisions of the proffer with him fully. These pages accurately and completely set forth the government's proof, as I understand it.

Date: 4/27/2022

Dani Jahn, Esquire
Attorney for the Defendant